USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5-18-18

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

PAUL GLEIT,

                                      Plaintiff,

          -against-

TAYLOR FRANCOIS-BODINE, Individually and
d/b/a FRANCOIS-BODINE CONSULTING

                                    Defendant.

------------------------------------------------------------------X

1:18-cv-00311-GBD-KHP

REPORT AND RECOMMENDATION

To:    THE HONORABLE GEORGE B. DANIELS, United States District Judge

From:  KATHARINE H. PARKER, United States Magistrate Judge

      Plaintiff Paul Gleit, a New York businessman, is an unhappy customer of Defendant Taylor Francois-Bodine and her consulting firm,[1] a "leading luxury matchmaking and elite relationship consulting firm" located in Virginia.[2] After paying Defendant more than $400,000 for less than ten (apparently failed) introductions, Plaintiff commenced this diversity action by filing a complaint (the "Complaint" or "Compl.," Doc. No. 1) claiming violations of New York General Business Law ("GBL") §§ 349 and 394-c, breach of contract, unjust enrichment, and fraud. He also seeks a declaratory judgment finding that the contract Plaintiff and Defendant entered into constitutes a marriage brokerage contract that is void as a matter of law, and equitable rescission of the contract along with a refund of the payments he made under it.

---

[1] At the time the parties entered into the contract at issue in this case and the commencement of this lawsuit, Defendant's firm was not incorporated. Recently, Defendant incorporated her firm. That entity, however, is not named in the Complaint and has not been served.

[2] The Complaint asserts that Defendant's business is in the Washington D.C. area, but Plaintiff does not dispute Defendant's assertion that her business is located in Virginia.

Ms. Francois-Bodine, who is currently *pro se*,[3] filed a motion to dismiss the Complaint (the "Motion to Dismiss" or "Mot.," Doc. No. 13) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons discussed below, this Court recommends that the Motion be GRANTED in part and DENIED in part.

## FACTS ALLEGED IN THE COMPLAINT

Plaintiff Gleit is a businessman and investor who resides in New York City. (Compl. ¶ 10.) In May 2017, Gleit contacted Defendant to learn about matchmaking services that she could provide to him in New York. (*Id.* ¶ 13.) While in New York, Gleit spoke with Francois-Bodine, who was in Virginia, over the phone and through email. (*Id.* ¶ 13.) He also studied her website[4] and other information about her services from New York. (*Id.*) Francois-Bodine told Gleit that she "routinely provided matchmaking services to clients in New York," that she frequently travelled to New York, and that she maintained an office in New York for purposes of meeting with clients. (*Id.* ¶ 14.)

On May 25, 2017, the parties entered into an agreement entitled "Francois-Bodine Consulting Personal Introductions Agreement" (the "Agreement"). (*Id.* ¶¶ 15-16.) The Agreement notes that Defendant's firm is "nationally based" and in the business of "providing introductions to individuals to enable them to meet others for the purpose of entering into long-term romantic relationships/marriage." (*Id.* ¶ 15.) Under the Agreement, Defendant charged a "Consulting/Matchmaking Fee" of $35,000 (the "Fee") and a processing fee of $490 for at least two years of matchmaking and

---

[3] At oral argument Defendant represented that she completed two years of law school.
[4] Ms. Francois-Bodine's website is www.francois-bodine.com.

social referral services.  (*Id.* ¶ 17.)  Gleit paid the Fee in ten installments between May and October 2017.  (*Id.* ¶ 20.)

In November 2017, Defendant and other representatives from her firm demanded that Gleit make additional payments for continued services.  (*Id.* ¶ 24.)  Gleit asserts Defendant "applied high-pressure sales tactics" to convince him to pay more money and misrepresented the nature of the additional payments.  (*Id.* ¶ 25.)  Defendant and her representatives contended that they had incurred credit card reversal and bank fees arising out of Gleit's installment payments.  (*Id.* ¶ 26.)  Francois-Bodine also proposed that Gleit enter into another agreement with Defendant (the "November Agreement" and together with the Agreement, the "Agreements") for an additional $81,819, to which Gleit agreed.  (*Id.* ¶¶ 28-30.)  It is unclear what additional services were to be provided under the November Agreement, and Gleit contends he entered into the November Agreement without a full understanding of what the amounts charged were for.  (*Id.* ¶ 30.)

According to Gleit, Defendant continued to pressure him to make additional payments to her and her firm.  He contends that Defendant made unspecified misrepresentations and used high pressure sales tactics to induce him to make an additional thirteen payments in the amount of $387,414.  (*Id.* ¶¶ 31-32.)

Between May and November 2017, Defendant provided Gleit with eight social introductions which resulted in six social dates.  These dates took place in New York City, Washington D.C. and Florida.  (*Id.* ¶ 33.)

In or about December 2017, Gleit retained counsel and demanded a refund of all amounts paid (that is, $427,204) plus his attorneys' fees and costs based on misrepresentations

3

about bank fees and credit card charges, overcharges for services and because Defendant "otherwise defrauded him." (*Id.* ¶¶ 34-36.) Defendant refused to provide a refund. (*Id.* ¶ 36.) Gleit pleads that on information and belief, Defendant engaged in a pattern of similar conduct directed at the public generally, justifying the imposition of punitive damages. (*Id.* ¶ 37.)

## **LEGAL STANDARD**

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the Complaint as true and draw all inferences in the Plaintiff's favor. *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Littlejohn v. City of New York*, 795 F.3d 297, 306-07 (2d Cir. 2015). To survive a motion to dismiss, the Complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While detailed factual allegations are not required, the Complaint must contain more than mere "labels and conclusions." *Iqbal*, 556 U.S. at 678. It must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (internal citation and quotation marks omitted). And, it must contain more than a "formulaic recitation of the elements of a cause of action." *Id*. As the Supreme Court explained in *Iqbal*, the "plausibility standard" asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

When a motion to dismiss is granted, the usual practice is to dismiss the claims without prejudice and grant a plaintiff leave to amend the complaint. *Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013) (per curiam); *see also* Fed. R. Civ. P. 15(a)(2) ("The

court should freely give leave [to amend] when justice so requires."). Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice, or futility. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

## DISCUSSION

Defendant asserts a number of arguments for dismissal. She first asserts that New York law does not apply to the Agreements between the parties and, thus, the first two causes of action brought pursuant to the GBL must be dismissed. She also asserts that Plaintiff has failed to state a claim under GBL § 349. Defendant contends that the Complaint fails to plead the existence of a marriage contract, requiring dismissal of the third cause of action. She asserts that Plaintiff has failed to plead a breach of contract and that the claim for unjust enrichment must be dismissed because it duplicates the breach of contract claim. She argues that fraud has not been pled with sufficient particularity, and in any event must be dismissed as duplicative of the breach of contract claim. Finally, she argues that neither rescission nor punitive damages are available relief and, as such, claims for this relief must be dismissed. The Court addresses each of these arguments in turn.

### A. *Applicability Of New York Law To The Agreements And Claims Under New York's GBL (First And Second Causes Of Action)*

Defendant asserts that Plaintiff cannot bring a claim under New York's GBL because New York law does not apply to the Agreements at issue in this case. Rather, she contends, Virginia law should apply to the Agreements. Neither party contends that the Agreements contain a forum selection clause; therefore, this Court presumes the Agreements are silent as to the law governing the contract.

"[A] federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits to determine the rules of decision that would apply if the suit were brought in state court." *Liberty Synergistics, Inc. v. Microflo, Ltd.,* 718 F.3d 138, 151 (2d Cir. 2013).  Thus, this Court looks at New York's choice-of-law rules for determining whether New York or Virginia law applies to the Agreements here.  New York courts follow a "center of gravity" test that considers the "(1) places of contracting, negotiation and performance; (2) the location of the subject matter of the contract; and (3) the domicile or place of business of [the] contracting parties." *Pac. Life Ins. Co. v. Bank of N.Y. Mellon*, 17-CV-1388 (KPF), 2018 WL 1382105, at *16 (S.D.N.Y. Mar. 16, 2018) (quoting *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317 (1994)).  The purpose of this test is to determine which state has the most significant interest in, or relationship to, the dispute.  *See Bank of New York v. Yugoimport*, 745 F.3d 599, 609 (2d Cir. 2014).

Here, the balance of factors weighs in favor of finding that New York law applies to the Agreements between Gleit and Francois-Bodine.  Gleit resides in New York, communicated with Defendant from New York, negotiated the Agreements from New York, and executed the Agreements while in New York.  (Compl. ¶¶ 3, 10, 13, 14, 15, 16, 20, 30, 31, 32.)  Gleit also paid Defendant from New York.  (*Id*. ¶ 20, 30, 31, 32.)  According to the Complaint, Defendant regularly traveled to New York to provide matchmaking services to clients in New York and represented to Gleit that she maintained an office in New York.  (*Id*. ¶ 14.)  At least some of the services Defendant provided to Gleit included introducing Gleit to individuals in New York for social dates in New York.  (*Id*. ¶ 33.)  None of the social dates were in Virginia.  (*Id.*)  Finally, Defendant and her representatives communicated with Gleit

6

over the phone and email when Gleit was in New York. (*Id*. ¶¶ 13, 14, 15, 16, 21, 22, 24, 25, 26, 27, 29.)  The only contact with Virginia is that Defendant offers her nationwide services from her offices in Virginia.  The Court rejects Defendant's argument that Plaintiff's arguments are the flip side of the same coin, because Defendant is offering services in New York and the alleged harm occurred to Plaintiff in New York.  Thus, this Court finds that New York law should apply to the Agreements at issue.

      Further, a party's ability to bring a claim under New York's GBL is not dependent on the law applicable to contracts between the parties.  Rather, for purposes of determining whether a statutory tort claim can be brought under the GBL, the Court looks at where the business transaction occurred and the strength of New York's connection to the transaction.  *See, e.g., Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013) (analyzing strength of New York's connection to allegedly deceptive transaction for purposes of determining whether claim could be brought under GBL § 349); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp.3d 467 (S.D.N.Y. 2014) (denying motion to dismiss a claim brought under GBL § 349 in diversity action involving New York consumer and New Jersey corporation); *Goshen v. Mut. Life Ins. Co. of N.Y.,* 98 N.Y.2d 314, 324-26 & n.1 (2002) (finding that GBL §§ 349a and 350 apply to transactions that take place in New York); *Meachum v. Outdoor World Corp.,* 235 A.D.2d 462, 464 (2d Dept. 1997) (denying motion to dismiss GBL § 349 claim based on choice-of-law provision in the parties' agreement designating Pennsylvania law because choice-of-law provision "does not preclude assertion of statutory claim, inasmuch as the claim does not involve any issue relating to the terms of the contract or its interpretation").

Here, Plaintiff, the purchaser of Defendant's services, was located in New York. (Compl. ¶ 3.) He alleges he was deceived and misled by Defendant while residing in New York. Further, at least some of the social introductions were made in New York, as some of the dates occurred in New York. (*Id.* ¶ 33.) Defendant advertised her services on the internet, including to consumers in New York. (*Id.* ¶¶ 12-14.) Defendant allegedly had other clients in New York and an office in New York. (*Id.* ¶ 14.) While Defendant's business is based in Virginia, Defendant's transactions with Plaintiff occurred principally in New York and not in Virginia. New York has an interest in regulating those business transactions that take place in New York and involve New York citizens. In sum, New York has strong connections to the alleged wrongdoing and transactions in this case. Therefore, Plaintiff may assert claims under New York GBL §§ 349 and 394-c.

Because Defendant does not argue that Plaintiff's claim under GBL § 394-c should be dismissed on the merits, and because this Court finds that Plaintiff may assert a claim under that law, Plaintiff's Motion to Dismiss as to the first cause of action should be denied.[5]

---

[5] GBL §394-c sets forth limitations on contracts involving social referral services. It defines "social referral service" as "any service for a fee providing matching of members of the opposite sex, by use of computer or any other means, for the purpose of dating and general social contact." N.Y. Gen. Bus. Law § 394-c(1)(a) (McKinney). It defines "ancillary services" as "goods or services directly or indirectly related to or to be provided in connection with the social referral service process, including but not limited to photography, grooming, cosmetology, dating etiquette, dating counseling, or other services." *Id.* at § 394-c(1)(b). In pertinent part, it prohibits contracts for social referral services that require a cash price in excess of $1,000 or of durations longer than two years. *Id.* at § 394-c(2). It also prohibits such contracts from requiring the purchase of ancillary services. *Id.* at § 394-c(2-a). To the extent the contract requires a payment of greater than $25, the contract must specify the number of social referrals per month to be provided. *Id.* at § 394-c(3). A purchaser has the right to cancel the contract and receive a refund of all monies paid, subject to a cancellation fee, if the provider does not furnish the specified number of social referrals for two or more consecutive months. *Id.* at § 394-c(4). The statute also mandates that certain language be included in social referral service contracts and that purchasers be provided with a "Dating Service Consumer Bill of Rights." *Id.* at § 394-c(7)(e).

Defendant does argue that Plaintiff fails to state a claim under GBL § 349. This law prohibits deceptive acts and practices in the conduct of any business. N.Y. Gen. Bus. Law § 349(a) (McKinney). It applies to "all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state." *Id.* at § 349(g). To assert a cause of action under this law, Plaintiff must plead factual content that allows the Court to draw the reasonable inference that: "(1) the [D]efendant has engaged in an act or practice that is deceptive or misleading in a material way; (2) the [P]laintiff has suffered injury by reason thereof; and (3) the deceptive act or practice is consumer oriented." *In re Sling Media Slingbox Advertising Litigation*, 202 F.Supp.3d 352, 359 (S.D.N.Y. 2016) (internal citation and quotation marks omitted); *see also Koch v. Greenberg,* 14 F.Supp.3d 247, 261 (S.D.N.Y. 2014), *aff'd* 626 F. App'x. 335 (2d Cir. 2015) (quoting *Gaidon v. Guardian Life Ins. Co. of Am.,* 94 N.Y.2d 330, 343–44 (1999)). "Both affirmative representations and omissions may qualify as deceptive or misleading acts or practices." *In re Sling Media*, 202 F.Supp.3d at 359). But, only those acts or practices that are "likely to mislead a reasonable consumer *acting reasonably under the circumstances*" are actionable under GBL § 349. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 26 (1995) (emphasis added). Finally, "[P]laintiff must prove 'actual' injury to recover under the statute, though not necessarily pecuniary harm." *See Stutman v. Chem. Bank,* 95 N.Y.2d 20, 29 (2000) (citing *Oswego*, 85 N.Y.2d at 26).

Plaintiff fails to satisfy the pleading standards to make out a claim under GBL § 349. Although he alleges that Defendant mislead him (Compl. ¶46), the facts supporting this contention are unclear. No specific misleading statements are detailed in the Complaint. Additionally, there are no facts suggesting that Defendant deceived other customers in New

9

York.  The mere fact that Defendant provided matchmaking services to other clients in New York does not suggest that Defendant was deceptive in the provision of such services generally.  Nor are there any facts whatsoever to suggest that the alleged deception of Plaintiff was misleading to consumers or the public at large.  *See Angermeir v. Cohen*, 14 F. Supp.3d 134, 157-58 (S.D.N.Y. 2014) (dismissing claim under GBL § 349 for failure to sufficiently plead injury to the public); *Lane v. Fein, Such and Crane, LLP*, 767 F. Supp.2d 382, 390-91 (E.D.N.Y. 2011) (same).  It is possible that Plaintiff may be able to add facts to support a claim under GBL § 349.  Therefore, this Court recommends that Defendant's Motion to Dismiss as to the second cause of action be granted without prejudice so that Plaintiff may be afforded an opportunity to replead his GBL § 349 claim.

### B. *Claim Seeking Declaratory Judgment That Arrangement Between The Parties Was A Marriage Contract That Is Void As A Matter Of Law (Third Cause Of Action)*

It is well-recognized that marriage brokerage contracts are contrary to public policy.  *See State of New York v. Leifer*, 392 N.Y.S.2d 175, 177 (Sup. Ct. New York C'nty Special Term 1976) (explaining that marriage brokerage contracts are widely recognized as void and collecting cases); *see also Jones v. Trump*, 971 F.Supp. 783, 788 (S.D.N.Y. 1997) (interpreting Connecticut law and holding that marriage brokerage contracts are contrary to public policy, and that contracts that violate public policy are unenforceable); Restatement (First) of Contracts § 582; 52 Am. Jur. § 184 ("Contracts designed to bring about a marriage between one of the parties to the contract and a third person, or between two strangers to the contract, are universally held to be against public policy and void.").  Here, the initial Agreement entered into between the parties stated that Defendant is in the business of "providing introductions to individuals to enable them to meet others for the purpose of entering into long-term romantic

10

relationships/marriage." (Compl. ¶ 15.)  At this stage of the proceedings, without more information about the terms of the Agreements entered into by the parties and the specific nature of the services rendered, the allegations of the Complaint–which must be assumed true–are sufficient to seek a declaratory judgment that at least the first Agreement is void as a matter of public policy.  Accordingly, this Court recommends that Defendant's Motion to Dismiss be denied with respect to the third cause of action.

## C.     *Breach Of Contract Claim (Fourth Cause Of Action)*

To state a claim for breach of contract under New York law, Plaintiff must allege: (i) the formation of an agreement; (ii) performance of the agreement by one party; (iii) breach of the agreement by the other party; and (iv) damages.  *Berman v. Sugo LLC,* 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (citing *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998)).  "Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract.*"  Berman*, 580 F. Supp. 2d at 202.  Rather, a claimant must make specific allegations that demonstrate the existence of an enforceable contract, the date of the contract's formation, the contract's "major terms," and provide specific allegations about the parties to the agreement.  *Id.*  Plaintiff identifies two contracts entered into by the parties:  (1) the Agreement, dated May 25, 2017and (2) the November Agreement.  Under the Agreement, Defendant charged a "Consulting/Matchmaking Fee" of $35,000 (the "Fee") and a processing fee of $490 for at least two years of matchmaking and social referral services. (Compl. ¶ 17.) Gleit paid the Fee in ten installments between May and October 2017.  (Compl. ¶ 20.) Additionally, Gleit asserts that between May and November 2017, Defendant provided Gleit

11

with eight social introductions which resulted in six social dates.  (Compl. ¶ 33.)  The Complaint does not attach the Agreement nor state what term or terms of this Agreement were breached.

Gleit asserts that the November Agreement called for payment of an additional $81,819, which Gleit paid.  (Compl. ¶¶ 28-30.)  Gleit does not attach the November Agreement to the Complaint nor recite any of its specific terms in the Complaint.  In fact, he asserts that he entered into the November Agreement without a full understanding of what he was receiving for the fee.  (*Id*.)  He also fails to identify a specific provision of the November Agreement that was breached.  Plaintiff's allegation that Defendant demanded additional payments beyond the payments required under the written Agreements does not constitute a breach of the Agreements – Plaintiff, a businessman, was not contractually obligated to make additional payments and could have simply declined to make them.  These demands have nothing to do with performance under the Agreements, at least as this Court can discern from the Complaint.

In sum, Gleit has failed to allege facts sufficient to render his breach of contract claim plausible.  It is possible, however, that Gleit may be able to re-plead his breach of contract claim.  Therefore, this Court recommends that Defendant's Motion to Dismiss as to the fourth cause of action be granted without prejudice so that Plaintiff may be afforded an opportunity to replead his breach of contract claim.

### D. Fraud Claim (Sixth Cause Of Action)

Under New York law, to state a claim for fraud, Plaintiff must allege: "(i) a misrepresentation or omission of material fact; (ii) which the defendant knew to be false; (iii) which the defendant made with the intention of inducing reliance; (iv) upon which the plaintiff reasonably relied; and (v) which caused injury to the plaintiff." *Wynn v. AC Rochester,* 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996)). Further, Federal Rule of Civil Procedure 9(b) requires that allegations of fraud be pled with particularity. Fed. R. Civ. P. 9(b).

Here, Plaintiff fails to satisfy the particularity requirements of Rule 9(b). Plaintiff dedicates a mere four paragraphs of his entire Complaint to his fraud claim, all of which consist of conclusory assertions without any factual bases. (Compl. §§ 62-65.) The alleged misrepresentations are vague at best. To the extent Plaintiff claims that Defendant made representations about certain bank charges or overdraft fees which were false, Plaintiff could have easily reviewed bank and credit card statements to assess the validity of such representations. Plaintiff asserts no facts whatsoever explaining how or why he reasonably relied on such statements. Nor does he plead scienter with specificity, alleging only that Defendant knew her statements were false (Compl. § 63) without providing any facts in support of his conclusory assertion. To the extent there were other material false representations, Plaintiff does not specify them. In short, Plaintiff has utterly failed to satisfy the pleading requirements for fraud. *See Negrete v. Citibank, N.A.,* 187 F. Supp. 3d 454, 466 (S.D.N.Y. 2016) (dismissing fraud claim on Rule 12(b)(6) motion to dismiss); *Pennecom B.V. v. Merrill Lynch & Co., Inc.*, No. 02-CV-5355 (DC), 2005 WL 2044948, at *7-8 (S.D.N.Y. Aug. 25, 2005) (same).

Accordingly, this Court recommends that Defendant's Motion to Dismiss as to the sixth cause of action be granted without prejudice so that Plaintiff may be afforded an opportunity to replead his fraud claim.

### E. *Unjust Enrichment And Recession Claims (Fifth And Seventh Causes Of Action)*

New York's choice of law principles dictate that an interest analysis should be applied to claims sounding in equity, such as claims for unjust enrichment and rescission. *See Icebox-Scoops, Inc. v. Finanz St. Honore, B. V.*, 676 F.Supp.2d 100, 109-10 (E.D.N.Y. 2009) (applying New York law to unjust enrichment and other equitable claims, rather than Pennsylvania law where a contract has a Pennsylvania choice-of-law provision, because the claims sound in tort, the tort took place in New York, and plaintiff suffered its alleged injury in New York). As noted above, New York is the place where the transactions occurred. Additionally, Defendant has not identified any material difference in the laws of Virginia and New York concerning the unjust enrichment or equitable rescission claims. *See Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co.,* 363 F.3d 137, 143 (2d Cir. 2004) ("Choice of law does not matter . . . unless the laws of the competing jurisdictions are in conflict. . . . In the absence of substantive difference . . . a New York court will dispense with choice of law analysis and if New York is among the relevant choices, New York courts are free to apply it.") (internal citation and quotation marks omitted). Thus, New York law governs the fifth and seventh causes of action for unjust enrichment and rescission, respectively.

Under New York law, to state a claim for unjust enrichment, Plaintiff must plead: "(1) [the] defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendant to make

14

restitution." *Hughes v. Ester C Co.,* 930 F.Supp.2d 439, 471 (E.D.N.Y. 2013) (internal citation and quotation marks omitted); *see also Corsello v. Verizon N.Y., Inc.,* 18 N.Y.3d 777, 790 (2012) ("The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which 'in equity and good conscience' should be paid to the plaintiff") (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011)). Unjust enrichment is available as a cause of action "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello,* 18 N.Y.3d at 790.

A claim for unjust enrichment is "not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.* at 790-91. However, Federal Rule of Civil Procedure 8 permits parties to plead alternative, inconsistent claims. Fed. R. Civ. P. 8(d); *see also In re Ideal Mortg. Bankers, Ltd.*, No. 10-BR-79280 (DTE), 2013 WL 6813737, at *8 (E.D.N.Y. Bankr. Dec. 23, 2013); *Rodriguez v. It's Just Lunch, Int'l,* No. 07-CV-9227 (SHS) (KNF), 2010 WL 685009 at *11 (S.D.N.Y. Feb. 23, 2010). For example, in *Rodriguez, the* defendant moved to dismiss an unjust enrichment claim as duplicative of a breach of contract claim. Under similar circumstances, the court denied the motion, finding that "[s]ince the plaintiffs have not, as of yet, demonstrated the existence of an enforceable contract(s), their unjust enrichment claim is not precluded, as a matter of law." *Rodriguez*, 2010 WL 685009, at *11. The court concluded that "the plaintiffs' allegations that they paid the defendants for dating services, but received service of an inferior quality to what they had been promised, are sufficient to state a claim of unjust enrichment." *Id.* Further, a complaint must satisfy the particularity requirement of Rule 9(b) only where the alleged unjust enrichment is premised on fraudulent acts. *Hughes,* 930 F. Supp. 2d at 471

(citing *Welch v. TD Ameritrade Holding Corp.,* No. 07–CV–6904 (RJS), 2009 WL 2356131, at *21 (S.D.N.Y. July 27, 2009)).  As discussed above, though Gleit pled alternative theories of breach of contract and unjust enrichment arising from Defendant's actions, he has failed to state a claim for breach of contract; thus, the unjust enrichment claim presently is not duplicative.

Turning to whether the facts pled support a plausible cause of action for unjust enrichment, it is clear that Defendant was enriched to the tune of $427,204 – an amount paid by Plaintiff for a mere eight social introductions.  That equates to over $50,000 per introduction.  Not only does this amount appear excessive based on the services rendered, it is grossly in excess of what is permitted under GBL § 394-c for social referral services.  N.Y. Gen. Bus. Law § 394-c (McKinney).  Therefore, at least at this early stage in the case, this Court finds that Plaintiff has pled sufficient facts to render a claim of unjust enrichment plausible.  Accordingly, this Court recommends that Defendant's Motion to Dismiss be denied with respect to the fifth cause of action.

As for Plaintiff's rescission claim, New York law provides for a rescission remedy arising from either fraud or breach of contract, but only where the breach is found to be "material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract."  *Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir. 1980) (quoting *Callanan v. Powers*, 199 N.Y. 268, 284 (1910); *see also D'Angelo v. Hastings Oldsmobile, Inc.,* 89 A.D.2d 785, 785-86 (4th Dept. 1982) (affirming judgment of trial court that plaintiff may recover rescission remedy based on fraud), *aff'd,* 59 N.Y.2d 773, 774 (1983); *Board of Managers of Soundings Condominium v. Foerster*, 138 A.D.3d 160, 164

(1st Dept. 2016) (affirming trial court's decision to deny motion to dismiss rescission claim because "[f]raud sufficient to support the rescission requires only a misrepresentation that induces a party to enter into a contract resulting in some detriment, and 'unlike a cause of action in damages on the same ground, proof of scienter and pecuniary loss is not needed'") (quoting *D'Angelo*, 89 A.D.2d at 785). Here, it appears that Plaintiff seeks rescission based on fraud because his only factual allegations in support of his rescission claim are that: (1) Defendant intentionally made false representations to Plaintiff with an intent to deceive Plaintiff, and (2) Plaintiff reasonably relied on such misrepresentations and suffered damages as a result. (Compl. ¶¶ 67-68.)

Because it is an equitable remedy, rescission is available only if damages would not be a "complete and adequate" remedy and "the status quo may be substantially restored" by equitable relief. *Rudman v. Cowles Communications, Inc.,* 30 N.Y.2d 1, 330 N.Y.S.2d 33 (1972). Plaintiff has failed to plead sufficient facts to show that damages would not be a complete and adequate remedy. For that reason, this Court recommends that Defendant's Motion to Dismiss as to the seventh cause of action for rescission be granted without prejudice.

### F.    *Availability Of Punitive Damages (Prayer For Relief)*

Finally, Defendant seeks dismissal of Plaintiff's claim for punitive damages. In his Complaint, Plaintiff includes a request for punitive damages in his prayer for relief, but does not specify which claim(s) the punitive damages are sought to remedy. In his opposition papers, (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, the "Opposition" or "Pl. Opp.," Doc. No. 20), Plaintiff asserts that he seeks punitive damages to vindicate public rights under New York's General Business Law. (Pl. Opp. at 20.)

"In New York, the courts require a plaintiff to establish four elements in order to obtain punitive damages 'as an additional and exemplary remedy when the claim arises from a breach of contract:' (1) the defendant's conduct must give rise to an independent tort; (2) the tortious conduct must be of [an] egregious nature . . . such as fraud aimed at the public generally; (3) the egregious conduct must be directed at the plaintiff; and (4) the conduct complained of must be part of [a] pattern directed at the public generally." *Magee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 588 (E.D.N.Y. 1997) (striking prayer for punitive damages at motion to dismiss stage where plaintiff sought punitive damages for GBL, tort, and breach of contract claims) (quoting *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 316 (1995)).  Here, the Court recommends dismissal of Plaintiff's tort claim under GBL § 349 and his fraud claim, thus he may be unable to prove an independent tort.  Regardless, Plaintiff merely asserts that Defendant's conduct was "egregious and tortious" and "part of a pattern of similar conduct directed at the public generally, thereby justifying the imposition of punitive damages." (Compl. at ¶ 37.) Plaintiff provides no factual bases or support for his allegations.  In his Opposition, Plaintiff argues that it would be premature to dismiss his claim for punitive damages.  (Opp. at 20.) However, Courts have struck claims for punitive damages at the motion to dismiss stage where the complaint fails to satisfy the pleading requirements for punitive damages.  *See, e.g.*, *MaGee*, 954 F. Supp. at 588; *Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288, 295 (S.D.N.Y. 1996).  Therefore, this Court recommends that Plaintiff's demand for punitive damages be stricken without prejudice.

**CONCLUSION**

For the reasons set forth above, this Court respectfully recommends that the following claims in the Complaint be dismissed without prejudice:  Claim Two (GBL § 349), Claim Four (Breach of Contract), Claim Five (Unjust Enrichment), Claim Six (Fraud), Claim Seven (Rescission based on Fraud), and the Request for Punitive Damages.  The Clerk of Court is respectfully requested to mail a copy of this Report & Recommendation to the pro se Defendant.


Dated: May 18, 2018
       New York, New York

                                      Respectfully Submitted,

*[signature: Katharine H. Parker]*

                                      Katharine H. Parker
                                      United States Magistrate Judge

**NOTICE**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).  A party may respond to another party's objections within fourteen days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Judge Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Daniels.  The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).